Ward v. Romero, 17 N. M. 88.

[No. 1476, March 23, 1912.]

STATE OF NEW MEXICO, ex rel C. W. G. WARD, Relator and Appellee, v. EUGENIO ROMERO, Treasurer, etc., of San Miguel County, Respondent and Appellant.

## SYLLABUS (BY THE COURT).

1. The office of district attorney, created by Section 24 of Article 6 of the Constitution of New Mexico, is a State office, and the incumbent is precluded by Section 9 of Article 20 from receiving to his own use any compensation, fees, allowance or emoluments, other than the salary provided by law.

2. The words "district officer" used in Section 3 of Article XX of the Constitution refer to the district attorney and district judge, but the words were used to designate the geographical limits within which such officer performed the duties of his office, and did not refer to the nature and grade of the office.

3. Prior to the adoption of the constitution, by statute, the district attorney was made the law officer of the territory, and was required to represent the territory, within his district in all cases, civil and criminal, and to give advice, when requested, to territorial officials. The fact that he may have performed his duties within a designated district, did not make him a district officer.

4. Under the constitution the district attorney is a part of the judicial system of the state, and is a quasi judicial officer.

5. An officer appointed or elected for a particular locality, whose duties are of a public or general nature, in the discharge of which the whole state is interested, is a state officer ,in an enlarged sense, and where it appears that such officer has not been dealt with by the legislature or the constitutional convention, as a local officer, but as a state officer, the court should give effect to the intention and understanding of the framers of the constitution.

6. A district attorney is an officer provided by the constitution, whose salary is to be fixed by the legislature, and

who serves without compensation until a salary has been provided by law.

7. Section 4 of Article 22 continues in force all laws of the territory, not inconsistent with the constitution, as laws of the State; held that Chapter 22, S. L. 1909 providing that the district attorney shall receive a stated sum of $500 per annum from the territory and providing fees for the major part of his compensation is inconsistent with the constitution. Having prohibited such officer from receiving any fees, or other emoluments of office, it was clearly not the intention that he should be confined to an annual salary of $500 per annum.

8. It is the duty of the court to interpret the various provisions of the constitution in such a manner as will carry out and give effect to the spirit of the whole instrument.

9. Where the spirit and intent of the constitution can be clearly ascertained, effect should be given to it, and the strict letter should not control, if the "letter" leads to incongrous results, clearly not intended.

10. The salary of the district attorney, when fixed by the legislature, may relate back to the time of his induction into office.

Appeal from District Court, San Miguel County.

### STATEMENT OF FACTS.

Charles W. G. Ward, was and is the district attorney of the Fourth Judicial District of the State of New Mexico. For the purpose of procuring a judicial determination of the question as to whether Sec. 7, Chap. 22 of the laws of New Mexico, of 1909, providing for the payment to the district attorney of fees in certain cases, was abrogated by the constitution of the State of New Mexico, the relator and appellee procured the allowance by the board of county commissioners of San Miguel County, of a fee, for services rendered. Payment of the warrant issued therefor was refused by the county treasurer and proceedings in mandamus were instituted to compel said official to pay the same. The lower court found for the relator and ordered that a peremptory writ of mandamus

issue, commanding said treasurer to pay said warrant. From such judgment respondent prosecutes this appeal. The additional facts appear in the opinion.

## OPINION OF THE COURT.

ROBERTS, C. J.—The question involved in this appeal arises as the result of the transition of our form of government from territorial to state. Under Chapter 22, S. L. 1909, provision is made for the payment to the various district attorneys of the territory, of fees, as compensation for their services, in addition to an annual salary of $500 per annum paid by the Territory. Section 24, of Article 6, of the constitution of the State, is as follows:

"There shall be a district attorney for each judicial district, who shall be learned in the law and who shall have been a resident of New Mexico for three years next prior to his election, shall be the law officer of the state and of the counties within his district, shall be elected for a term of four years, and shall perform such duties and receive such salary as may be prescribed by law," and Section 9 of Article 20 provides:

"No officer of the state who receives a salary shall accept or receive to his own use any compensation, fees, allowance or emoluments for or on account of his office in any form whatever, except the salary provided by law." and Section 1, of Article 10 reads:

"The legislature shall at its first session, classify the counties and fix salaries for all county officers which shall apply to those elected at the first election under this constitution. And no county officer shall receive to his own use any fees or emoluments other than the annual salary provided by law, and all fees earned by any officer shall be by him collected and paid into the treasury of the county."

A reading of the two sections last quoted will clearly demonstrate that, if a district attorney is either a state or a county official that he is not entitled to collect and retain to his own use any fees or emoluments of office. In the case of Territory ex rel Delgado, v. Romero, Treasurer,

etc., decided at the present term of this court, we held that a county officer, under the section last quoted was not entitled to collect and retain to his own use fees, under the statutes of the territory providing therefor. But no argument is necessary to demonstrate that a district attorney, under our constitution, is not a county officer. He is elected by the voters of each judicial district, comprising from two to four counties, and there is no language used in the constitution evincing any intention on the part of the constitutional convention to classify or designate a district attorney as a county official.

What then is the nature of his office? That he is either a district or a state official is apparent. If the former, then he does not come within the prohibition of the constitution, and there is no inhibition against his receiving fees as compensation, instead of a salary. If the latter, then he is precluded from collecting and retaining fees or other emoluments of office, save "the salary provided by law."

The supreme court of Colorado, in the case of Merwin v. Board of Commissioners, 67 Pac. 285; 29 Colo. 169, speaking through Mr. Justice Campbell, says, "A district attorney is not a county or precinct, but a district officer." but no reason is given whatever for the conclusion.

Counsel for appellee relies upon two provisions of the constitution to support his contention that a district attorney is a district officer and not a state officer, viz: Section 13 of Article 5:

"All district, county, precinct and municipal officers shall be residents of the political subdivisions for which they were elected or appointed." And Section 3 of Article 20:

"The terms of office of every state, county, or district officer, except those elected at the first election held under this constitution, and those elected to fill vacancies, shall commence on the first day of January, next after his election," asserting, that by the sections just quoted the constitutional convention clearly intended to classify district attorneys and district judges as 'district officers.'"

If the framers of the constitution intended to create a separate class of officials, to be known as district officers, and to relieve this class from the injunction against re ceiving fees for their services, we are bound to give effect to their intention.

The attorney general classifies Judges of the District Courts as "district officials" and if district attorneys are "district officers" he is correct. It must be conceded that the constitution, by the last section quoted, clear · ly refers to district attorneys and district judges when it uses the words "district officers" in speaking of the term of office. But did the constitutional convention, by the use of the words, intend thereby to designate a separate and distinct class of officials, or to bring clearly within the purview of said section officers which it had therefore called "district attorney" and "district judge?" Was the language used intended merely as descriptive of the territorial limits of the official duty of the officer, or to place him in a separate and distinct class.

A warden of the penitentiary is a state officer unquestionably. Suppose that New Mexico were divided into two districts by a law, which provided for the erection of a penitentiary in each district, and the committal therein of all convicts convicted within the named district; would the warden be any less a state official, even though he might be designated by law as "Superintendent of the First District." We think not.

The constitutional convention divided the State into eight judicial districts, and provided for a district judge and a district attorney for each judicial district. By the designation "district", does it make them any less state officials, if in fact their duties and functions concern the State at large and are not limited to the particular district for which they have been elected? If a district judge is not a state official he does not come within the provisions of Section 9 of Article 20 supra. and there is no restriction upon the power of the legislature to provide "compensation, fees, allowance or emoluments" for him at its pleasure. We cannot conceive that the convention, by the use

of the language employed in Section 3 of Article 20 supra., intended to produce such a result, or to create a class of officers theretofore unknown in New Mexico, and to relieve such officials from inhibitions imposed upon all other designated officers of the State.

Judge Cooley, in his work on constitutional limitations (7th ed.) p. 91 says:

"Every such instrument is adopted as a whole, and a clause which, standing by itself, might seem of doubtful import, may yet be made plain by comparison with other clauses or portions of the same law. It is therefore a very proper rule of construction that the whole is to be examined with a view to arriving at the true intention of each part."

In what sense did the framers of the constitution use the word "district," when they provided for the office of district attorney? Did they call into existence an officer, theretofore unknown in New Mexico, with whose functions, powers and duties the people were not familiar?

Let us consider the recent provisions of our territorial statutes relative to this office and we shall find a satisfactory answer to the question. Sec. 3, Chap. 76, S. L. 1891, in defining the duties of the district attorney says:

"It shall be the duty of each of the district attorneys in this territory to prosecute and defend for the territory in all courts of record of the county or counties in their respective districts, all *causes, criminal and civil,* in which the Territory * * * * may be a party or interested or concerned."

In an act of the legislative assembly of 1909, (Sec. 2, Chap. 22), the above duties are again enjoined upon him, and in addition it is made his duty to advise all territorial officials whenever his advice is requested. He was made the law officer of the Territory, and the fact that he may have performed his duty, in prosecuting and defending suits, within defined limits did not make him any less the representative of the Territory. He was an agent, provided for by the legislature and appointed by the governor to perform the high function of the State in the preservation of the public peace and the protection of life and property;

he prosecuted in the name of the people of the Territory, not of any county or district; he was the advocate of all the people of the Territory, in the enforcement of law and did not represent one county or one district. He was not required to reside at the time of appointment within the district for which he was appointed. While it is true he was the law officer of the various counties within his district, yet this duty was but an incident of the office, or the employment of a state agent for a purely local purpose, and did not change the nature of his office. He was the known legal representative of the State, and the constitutional convention simply intended to provide for a similar office, when they adopted Section 24, Article 6 supra.

The constitution makes him the law officer of the State and of the various counties within his district, and we are clearly of the opinion that he is a State officer and is precluded from receiving to his own use any compensation, fees, allowance or emoluments, other than the salary to be provided for him by the legislature. The position of the court is amply supported by the adjudication of the courts, to which we will now advert.

The Supreme Court of Arkansas, in the case of Griffin v. Rhoton, 107, S. W. 380, in considering the question as to whether the district attorney was a State officer, within the meaning of a constitutional provision which provided that no officer of the State should receive for salary, fees amounting to more than $5,000 net profits per annum, says:

"This court is of the opinion that the constitutional provision applies to the office of prosecuting attorney. It is a State office within the meaning of this provision. A prosecuting attorney is, according to the requirements of the constitution, elected by the qualified electors of the circuit for which he is to serve, and must be a resident of that circuit. Nevertheless he is elected as an officer of the State. He draws a salary from the State as one of its officers, which is provided for in a section of the constitution, grouping together the other State officers, and he is the representative of the State in all criminal prosecutions in

his circuit. It is true, that he is by statute, made the representative of each county in his circuit in all litigation in which the counties are concerned. Some of the emoluments of his office come from the counties, the statute providing that in certain contingencies the counties shall pay the cost of criminal prosecutions. Still he is an officer of the State and represents the several counties in his district only as political sub-divisions of the State."

Chief Justice Campbell, in the case of Douvielle v. Manistee, Supervisors 40 Mich. 585, in discussing the question as to whether Probate Judges were county officers, within the terms of a statute allowing a board of supervisors to fix the salary of county officers, says:

"It is very clear to us that the duties performed by probate judges are in no sense services performed for their respective counties, and they are in no sense county officers. They exercise a portion of the judicial and prerogative power of the State."

Judge Cooley, in the case of People v. Hurlbut, 24 Mich. 44, says: "For those classes of officers whose duties are general, such as the judges, the officers of militia, the superintendent of police, of quarantine, and of ports, by whatever name called, provision has, to a greater or less extent, been made by State appointment. But these are more properly State than local officers; they perform duties for the State in localities, as collectors for the general government, and a local authority for their appointment does not make them local officers when the nature of their duties is essentially general."

In the case of Leib v. Commonwealth, 9 Watt's Reports, 200, it was urged that as the constitution, in speaking of the court of common pleas, used the expressions "in each county," "of each county," and "within each county," that the office was a county office and the judge of said court a county officer. The court says:

"We think the court of common pleas of each county is to be considered as a State court, and the office of an associate judge of that court a State office. It is true the office is exercised in a county, but that circumstance does not make it a county office. The officers of the heads of de-

partments, such as the secretary of the land office, survey-
or general, auditor general, and State treasurer, are exer-
cised at Harrisburg, within the county of Dauphin, yet
they are clearly State, not county officers. It is also true
that the constitution and laws in speaking of the courts
of common pleas term them at different times the courts
of common pleas "in each county," "of each county," and
"within each county." But the phraseology seems to refer
to the geographical limit within which the duties of each
each are to be exercised, and not the nature and grade of
the office."

It seems to us that the reasoning of this case is a com-
plete answer to the contention that because the district
attorney is referred to as a district officer, it was the in-
tention of the constitutional convention that he should be
classified as much, and not as a State officer. While so des-
ignated, the phraseology simply designates the geographical
limits within which the duties of his office are to be exer-
cised, and does not refer to the "nature and grade of the
office."

In the case of Landon v. Mayor, etc., of New York, 39
N. Y. Superior Court Reports 467, in speaking of the
judge of the court of Common Pleas, Chief Justice Monell,
says:

"The judicial department is a part of the general gov-
ernment of the State. It forms no exclusive part of any
of the political sub-divisions of the State. It administers
its functions for the people at large and except in some
cases, is unlimited in its jurisdiction. The court of com-
mon pleas is a part of this judicial system and although
there is a territorial limitation to its organization, it nev-
ertheless is not dissevered from the general judicial depart-
ment of the State. It administers the law for all the peo-
ple, and is not confined to the constituency of a particular
district. * * * * The judges of this court are among the
class of judicial officers who are denominated public officers
of the State (1 R. S. 95, Sec. 1.) If such officers are with
functions, which at least for some purposes, extend over
the State, then they are not necessarily county or city offi-

cers, but officers of the State, and a part of the State judi-ciary."

Under our constitution the district attorney is a part of the judicial system of the State. His duties, powers and functions are dealt with under the head of "judicial department." He is a quasi judicial officer.

**4**

In the well considered cause of Burch v. Hardwick, 30 Gratt, 24, the Supreme Court of Virginia in discussing the distinction between State and county officers, reviews the authorities and concludes:

"The distinction recognized in all of them is between offi-cers whose duties are exclusively of a local nature and offi-cers appointed for a particular locality, but yet whose duties are of a public or general nature. When they are of the latter character they are State officers, whether the legisla-ture itself makes the appointment or delegates its authori-ty to the municipality. The State, as a political society, is interested in the supression of crime and in the preserva-tion of peace and good order, and in protecting the rights of persons and property. No duty is more general and all pervading than this. It extends alike to towns and cities as to the country. It looks to the preservation of order and security in the State * * * * * and in fine, the suppression of all those disorders which affect the peace and dignity of the State and the security of the citizens. The instru-mentalities by which these objects are effected, however, appointed, by whatever name called, are agncies of the State, and not of the municipalities for which they are ap-pointed or elected."

We do not desire to be understood as holding that the constitutional convention intended to include within the designation of "State officers," all the peace officers of the State, or even judges of probate courts and justices of the peace, because by common understanding of the people, and in a popular sense, and by reason of prior legislative enactments and classification, many of these officials were evidently considered and dealt with as purely local officers, and where it is evident that the constitution, in dealing with these officials, did so in the popular sense, we should give effect to the intention.

**5**

The Supreme Court of Tennessee, in "The Judges Salary Cases," 110 Tenn. 370, says: "The several judges of the chancery, circuit and criminal courts which may from time to time be created by the general assembly are unquestionably State officers elected and commissioned for State "purposes."

The constitution of the State of Washington, Article 3, Section 5, provides for a Superior Court in each county and the election of at least one judge by the electors of each county for such court. Article 6, Sec. 8, provides for the election of State officers every fourth year, and fixes the time of election. The question arose as to whether judges of the Superior Courts were State officers, required to be elected as other State officers were elected. The court says, in the case of State v. Twitchell, 31 Pac. 19.

"That they are more accurately described as State officers then as county or district officers is evident, not only from the character and extent of their jurisdiction and the locality in which they may be called upon to discharge their duties as such officers, but also from the fact that they are paid, at least in part, by the state, and vacancies occurring in the office are to be filled by the governor. In other states, having similar provisions in their constitution as to Superior Court judges, they have uniformly been held to be State officers. We think the reasonable construction of the whole of the constitution will show that Superior Court judges are included within the designation of "State officers" as used in said Section 8.

We might remark that our constitution likewise provides that vacancies in the office of district attorney are to be filled by the governor by appointment.

The case of Burch vs. Hardwick, supra., is approved in the case "in re. Police Commissioners" No. 9 At. 36, by the Supreme Court of Rhode Island.

We are aware of the fact that several states have held prosecuting officials, whose territorial limit were confined to a single county, to be county and not State officers, but these decisions were probably upon the theory, that the constitution, or legislative enactments had dealt with these offi-

cers in the popular sense, and not in the more enlarged sense.

It is argued, that a holding that the district attorney is a State officer, within the inhibition of Sec. 9, Art. 20 of the constitution will leave the district attorney with a salary of but $500 per annum, which could not be increased or diminished by the legislature, and that this is evidence of the intention that he was not considered as a State official. But is this contention sound? Is he not rather, an officer provided by the constitution, whose salary is to be fixed by the legislature, and who serves, if he chooses to continue in office, without compensation until a salary has been provided by law?

Section 4 of Article 22 (schedule) continues in force all laws of the territory, not inconsistent with the "provisions of this constitution," as laws of the State. Chapter 22, S. L. 1909, provides for the appointment of district attorneys and prescribes their compensation. An annual salary of $500.00 is to be paid them by the Territory, quarterly, and they receive fees for all services rendered by them in criminal and civil cases. It clearly appears from the act in question, that their compensation was to be paid largely by fees, payable by the various counties. It can not be that the framers of the consittution intended that this old fee and salary law should remain in force, or that the portion of it which provided for a payment by the Territory of a salary of $500.00 only, which sum would not even compensate the district attorney for his traveling expenses, should remain.

The Supreme Court of Indiana, in the case of the State ex rel Collett, v. Gorby, 122 Ind. 17, says: "If a proposed construction of a statute, or of a constitutional provision, when carried to its legal and logical consequences, leads to results which could not have been within the contemplation of the makers of the law, or the framers of the constitutional provision, then such proposed construction must be erroneous, for it is a fundamental principle of construction that the intention of the law makers must prevail."

It was clearly the intent of the constitutional convention

that all officers therein provided for, should be upon a salary basis. Not a line of the instrument indicates a different purpose. It is the duty of this court to interpret the various provisions of the constitution to carry out the spirit of that instrument. We should not permit legal technicalities, and subtle niceties, to control and thereby destroy what the framers of the constitution intended.

Where the spirit and intent of the instrument can be clearly ascertained, effect should be given to it, and the strict letter should not control, if the letter leads to incongruous results, clearly not intended.

It is apparent that the constitutional convention did not intend that the old fee and salary law should remain in force and effect, or that a part of it should be effective. We think it is in conflict with Section 9, Article 20 supra., and that no salary is provided by law for the district attorney.

From what we have said it follows that the district attorney under the constitution, is a State officer; that he is not entitled to accept or receive to his own use any compensation, fees, allowance or emoluments for or on account of his office; that he is an officer, serving without salary, and that it remains for the legislature to determine the amount of salary he shall receive; that the salary when fixed and determined may relate back to the time of his induction into office.

It follows that the lower court erred in entering judgment for the relator, and the cause is therefore reversed with instructions to the lower court to enter judgment for the respondent.