9 P.(2d) 1023

## NYE v. BOARD OF COM'RS OF EDDY COUNTY.

### No. 3748.

Supreme Court of New Mexico.

Feb. 3, 1932.

Rehearing Denied April 15, 1932.

E. K. Neumann, Atty. Gen., for appellant.

Caswell S. Neal, of Carlsbad, for appellee.

Herman R. Crile, H. M. Dow, and L. O. Fullen, all of Roswell, amici curiæ.

WATSON, J.

By peremptory mandamus, the board of county commissioners of Eddy county has been ordered to pay a claim of the county clerk for one month's "additional compensation," under 1929 Comp., § 33-3202; she having personally performed the duties of clerk of the district court.

The merit of the board's appeal depends upon the meaning of the section cited, enacted as section 2 of the Salary Act of 1915. For present purposes, amendments are immaterial.

Counties having been classified according to assessed valuation by the preceding section, section 33-3202, in so far as we deem it material here, provides:

"Upon the basis of the foregoing classification, the annual salaries of the county officers in the several counties of the state, for the terms for which such officers were elected, are hereby fixed as follows:

"Counties of the First Class.

\*     \*     \*     \*     \*     \*     \*

"County clerk, three thousand dollars and eighteen hundred dollars additional for a deputy or deputies; \* \* \*

"Counties of the Second Class.

\*     \*     \*     \*     \*     \*     \*

"County clerk, twenty-two hundred dol-

lars and fifteen hundred dollars additional for a deputy or deputies.

\*    \*    \*    \*    \*    \*    \*

"Provided, that whenever during any calendar year the fees earned and turned into the county treasurer by the county clerk, exclusive of those derived from the district court as shown by the certificate of the county treasurer, shall exceed in counties of the first class the sum of thirty-five hundred dollars; in counties of the second class the sum of three thousand dollars; \* \* \* an additional deputy or deputies may be employed in such clerk's office in sufficient number to take care of any emergency, upon the authority of the county board of commissioners at a salary to be fixed by the board of county commissioners, but in no case shall the salary exceed $100.00 per month, salaries for such additional fee deputies to be paid out of the fees collected and turned over to the county treasurer but no such deputy or deputies shall be employed unless the county clerk devotes himself personally to the duties of his office during usual business hours.

"And, provided, further, until relieved by law from the performance of the duties of clerks of district courts, the county clerks of the several counties in the state shall respectively receive additional compensation as follows:

"In counties of the first class, fifteen hundred dollars per annum. In such counties where the fees derived from the district court, exclusive of fines and forfeitures, during any calendar year shall exceed twenty-five hundred dollars an additional deputy may be employed at a salary of not to exceed seventy-five dollars a month.

"In counties of the second class, one thousand five hundred dollars per annum.

\*    \*    \*    \*    \*    \*    \*

"Such amounts shall be payable only to the deputy performing such service. Whenever such amount or any portion thereof shall have been heretofore paid to any person other than the county clerk, such county clerk shall reimburse the fund from which such payment was made, out of the allowance hereby made."

The controversy arises out of the seeming conflict between the one provision that the county clerks shall receive "additional compensation" until relieved of the duties of district court clerks, and the other provision that such amounts shall be payable only to the deputy performing such service.

"Such amounts" as are made payable only to the deputy should not, of course, be paid to the clerk. The Attorney General contends that the clerk's present claim is one of those amounts, payable only to a deputy. Appellee contends that it cannot be, because the amount claimed by her is clearly given to the clerk as "additional compensation" for performing specific duties, if not for administering a separate office.

Put to it to point out what "such amounts" are, counsel for appellee claims that they are only the amounts, not exceeding $75 a month, allowed for "an additional deputy" who may

be employed if district court fees in first class counties shall exceed $2,500.

This solution is more ingenious than convincing. It certainly reduces the importance of the provision to a minimum. It becomes a triviality. Before adopting this answer, we must look further.

· Reading the provision with the sentence immediately following, we cannot doubt that it refers to the office of clerk. But for this it might perhaps be argued that it refers to the allowances for the deputies of all officers. We know of no reason why one rule should be made as to the ordinary deputies of the clerk, and another for the deputies of the treasurer and the assessor.

It would seem, then, that "such amounts" means the "additional compensation" which county clerks are to receive until relieved by law from the duties of court clerks. It seems also that the Legislature must have contemplated, though it has not expressly commanded, that each county clerk should have a deputy to perform the duties of court clerk.

This gives importance to the provision, is entirely reasonable, and does no violence to the arrangement of the various provisions of the section. It gives it application to the whole of the proviso in which it occurs.

It has not, however, advanced our effort to harmonize the two expressions thought to be inconsistent. We must, therefore, turn to "additional compensation" to see if it will yield to interpretation. It does so readily.

The salary of the clerk is plainly fixed at $2,200. Any emoluments additional to the "salary" to be fixed by law, the Constitution prohibits. Article 10, § 1. Of course, if it is really "salary," it would not matter if the Legislature saw fit to call it "compensation." But, a "salary" having been prescribed, the idea suggests itself that the "additional compensation" was to be something else. For every county office in each of the five classes the section prescribes, in addition to the salaries, certain allowances for deputy hire. If the term "additional compensation" be interpreted "additional allowance," all inconsistency disappears. That interpretation we are constrained to adopt, and that interpretation is fatal to appellee's claim and to the judgment.

Attorney General Clancy, in 1916, concluded otherwise. He rendered his opinion to the then traveling auditor that the provision for paying "such amounts" only to the deputy is of no effect, unless the clerk has in fact appointed a deputy for the purpose, and if the clerk himself performs the duties of clerk of the court. Op. Att. Gen., 1915–16, p. 375.

The learned former Attorney General must have overlooked a consideration which to our minds condemns this view as unsound. Under it, by the simple device of failing to appoint the deputy, the clerk could increase the salary or compensation or emoluments of office from $2,200 to $3,700. This would be strange public policy; conducive neither to economy nor to efficiency. This weakness is

no doubt the reason why counsel for appellee rejected this view and sought another.

Counsel for appellee claims no merit for the interpretation he suggests, except that no other will give to each part of the section the force to which it is entitled, and meet the requirements of numerous familiar canons of construction to which he calls attention.

█ But canons of construction are mere aids in determining legislative intent. Courts will not be mastered by them and driven to a result which could not have been contemplated. It is easy, however, thus to support our present conclusion.

"Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship, or injustice, to favor public convenience, and to oppose all prejudice to public interests." State v. Llewellyn, 23 N. M. 43, 167 P. 414, 415; State ex rel. Otto v. Field, 31 N. M. 120, at page 165, 241 P. 1027. And this is true, even if it be necessary for the court to seek a word better expressive of the legislative intent than that which it employed. Baca v. Board of Com'rs of Bernalillo County, 10 N. M. 438, 62 P. 979; State v. Davidson, 33 N. M. 664, 275 P. 373; State v. Southern Pacific Co., 34 N. M. 306, 281 P. 29; Ex parte De Vore, 18 N. M. 246, 136 P. 47; Lewis' Sutherland Stat. Const. (2d Ed.) §§ 376, 381–384.

█ Standing alone, "shall receive additional compensation" seems very plain. But, when connected with the direction that it be paid only to some one else, it is evident that the ordinary meaning of the phrase was not intended. There are other compensations than monetary. To be allowed a deputy at public expense to do the work compensates or counterbalances for being required to perform the duties of clerk of court.

█ No one can read this section without being impressed that it is patchwork. Proviso has been added to proviso. It may have been the first thought to give the clerk monetary compensation. When that was abandoned for the plan of providing a deputy, the expression "additional compensation" should, of course, have been changed. Since it was not, we must work out the result of the two provisions as they operate each on the other. For two reasons preference must be given to the provision placed later in the section: First, it cannot be made to yield to any reasonable variance, while the other provision yields readily; and, second, if the provisions were not reconcilable, the later in position would repeal the earlier. Lewis' Sutherland Stat. Const. (2d Ed.) § 349; 36 Cyc. 1130; Board of County Commissioners v. Leavitt, 4 N. M. (Gild.) 37, 12 P. 759.

Much is made in argument of the "hardship" upon the clerk of requiring her to perform the duties of court clerk without this "additional compensation." In an early case under the Constitution this court held that there was no presumption that a public officer was to receive any compensation. Delgado v. Romero, 17 N. M. 81, 124 P. 649, Ann. Cas. 1914C, 1114; and see Ward v. Romero,

17 N. M. 88, 125 P. 617; Fancher v. County Commissioners, 28 N. M. 179, 210 P. 237. In Baca v. County Com'rs, 28 N. M. 458, 214 P. 757, we held that a statute prescribing compensation for an officer is in derogation of the common law and is to be strictly construed. Moreover, the county clerk is not compelled personally to perform these duties. A deputy to perform them is contemplated by clear implication.

Counsel for appellee also contends that the last sentence above quoted conclusively shows that payment is to be made to the county clerk and to none other. We are unable to attribute any such meaning to it. It should be recalled that the act not only prescribed salaries and allowances for the future, but made necessary provision for county officers who had been serving for more than three years without salaries, or any provision for the expenses of office. Its re-enactment in 1929 does not change the meaning of "heretofore," which still means prior to the taking effect of Laws 1915, c. 12. Lewis' Sutherland Stat. Const. (2d Ed.) § 237; Ex parte Carrillo, 22 N. M. 149, 158 P. 800; Barrows v. People's Gaslight & Coke Co. (C. C.) 75 F. 794; State ex rel. Fair v. Hamilton, 92 Wash. 347, 159 P. 379; McKibben v. Lester, 9 Ohio St. 628.

The eminent counsel whose services as amici curiæ have been tendered and accepted have not sought to sustain either the theory of the Attorney General or that of appellee's counsel. They contend only that early, long, and continuous official recognition of the right here claimed is strong evidence, not only as to the intent of the 1915 Legislature, but as to sanction by succeeding Legislatures. This is perhaps the strongest position that can be taken in favor of the judgment.

Reliance is placed upon the Attorney General's opinion before referred to and upon the stipulated fact that ever since the passage of the act Eddy county clerks have been paid this "additional compensation."

We do not think, however, that these facts are sufficient. In the first place, the law is of state-wide application. Its interpretation is not to be controlled by the practice in one county. In the second place, Attorney General Bowman, in 1921, rendered an official opinion to the exact contrary of Attorney General Clancy's. Op. Att. Gen. No. 3110. The opinions for that period do not seem to have been published, but we seriously doubt whether the force of such opinions is to depend upon their publication and distribution in book form. Later Attorney General Otero, without referring to either of the former opinions, advised that the clerk was entitled to the "additional compensation"; not noticing the requirement that it was to be paid only to the deputy. Op. Att. Gen. 1929-30, p. 40. Finally, Assistant Attorney General Patton rendered an opinion, No. 241, as yet unpublished, advising as we now hold. This opinion occasioned the rejection of appellee's present claim. So it has not been shown either that the practice was general or that the official rulings were uniform.

Counsel for appellee makes the same point, and he would add to the facts by asking us

to take judicial notice that these salaries are budgeted under scrutiny of the state tax commission, and thus to conclude that they could not have been paid without the knowledge and sanction of state officials, as well as of the county officials, charged with the execution of the law. It is apparent, however, that the item might be properly budgeted without disclosing that the payment was to be made contrary to law.

Finding no substantial consideration to support appellee's right, and no sufficient evidence to cause us to yield our clearly defined views as to the meaning of the statute, in favor of long-continued and uniform administrative interpretation and practice, we are constrained to reverse the judgment. The cause will be remanded, with a direction to set aside the judgment and to vacate both the peremptory and the alternative writs.

It is so ordered.

BICKLEY, C. J., and PARKER, SADLER, and HUDSPETH, JJ., concur.