288 P.2d 671

**ROWAN DRILLING COMPANY, Inc., a Corporation, Appellee,**

**v.**

**BUREAU OF REVENUE of the State of New Mexico, Appellant.**

**No. 5896.**

Supreme Court of New Mexico.

Oct. 4, 1955.

M. W. Hamilton, Santa Fe, for appellant.

Simms & Modrall, Albuquerque, for appellee.

SADLER, Justice.

The sole question for decision on this appeal is whether the nine drilling rigs of appellee, plaintiff below, here involved, were purchased * * * for use in this state within the meaning of 1953 Comp. § 72–17–3, which provides:

"An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased from a retailer on or after July 1, 1939, for storage, use or other consumption in this state at the rate of two per cent (2%) of the sales price of such property; * * *."

The question arises out of an action instituted by Rowan Drilling Co., Inc., v. Bureau of Revenue of the State of New Mexico, for the recovery of a compensating use tax assessment imposed by the defendant in the sum of $4,721.10 and paid under protest by the plaintiff. The tax involved in the action was assessed on the use in New Mexico of certain drilling rigs listed in a schedule entitled "Rig History on Drilling Rigs owned by Rowan Drilling Co., Inc., used in the State of New Mexico and covered by order of Compensating Tax Division, Bureau of Revenue, State of New Mexico," which schedule was introduced in evidence at the trial and marked plaintiff's Exhibit 1.

Certain of the rigs numbered 2, 4, 7 and 8, were purchased by the plaintiff prior to July 1, 1939, and are exempt from consideration in imposition of the tax by express language of the act. None of the drilling rigs involved in the tax paid was purchased specifically for storage, use or other consumption in New Mexico. Indeed, each of such rigs was purchased specifically for use in some other state than New Mexico.

Plaintiff is engaged in the business of drilling oil and gas wells on a contract basis in a number of states and, in performing work for its customers, it is necessarily required to transfer drilling rigs from one state to another state. When the drilling rigs here involved were purchased, it was plaintiff's intention to use or store them in any of several states where the demands of its business might require, in accordance with its usual practice of transferring equipment from one job to another.

None of the drilling rigs listed in the schedule above mentioned (plaintiff's Exhibit 1) was first used in New Mexico, but each of them was first used in some other state and only brought into New Mexico when the demands of plaintiff's business required. In purchasing such drilling rigs outside the State of New Mexico, the plaintiff had no intention to evade the sales tax of the State of New Mexico. The compensating use tax actually assessed on the drilling rigs involved in this action was assessed on the basis of the book value of each rig at the time of the assessment.

The trial court having made findings of fact in accordance with the foregoing recitals concluded as a matter of law from such facts that the use tax assessment made the subject of this action was illegally and improperly imposed. Amplifying its con-

clusions, the trial court held the act in question does not apply to the storage or use of the drilling rigs in question because they were not purchased for storage, use or other consumption in this state, one of the essential elements of taxability under the act being a specific intent at the time of purchase to store or use the property in New Mexico. As a corollary, the court concluded the general intent of the plaintiff, at the time of purchase, to use the drilling rigs in any of several states where its business might require, including New Mexico, was not sufficient to support an assessment of the tax on plaintiff.

The court followed up with a conclusion that the rigs numbered 2, 4, 7 and 8, mentioned above, though used in the State of New Mexico, were not subject to the tax under express provisions of the 1939 act, because purchased prior to July 1, 1939. Then came the basic conclusion that plaintiff was entitled to judgment against the defendant for the sum of $4,721.10, the amount for which recovery was sought, with interest thereon from September 18, 1953, at the rate of 6 per cent. per annum, together with costs of the action. This appeal followed.

Counsel for the appellant who was defendant below argues his case under the single claim, presented as Point 1, that the tax involved in the case was legally and properly imposed under the compensating use tax act of the State of New Mexico. A ruling by the trial court, carried forward into its findings of fact, conclusions of law and the judgment entered, denied the defendant's contention in this particular. We have only to decide whether the court erred in making the ruling it did and in resting a judgment thereon for the recovery by plaintiff of the use tax paid to defendant.

There seems to be agreement between counsel that there are two cases more nearly in point than any other dealing with the legal issue involved. One of them, Chicago Bridge & Iron Co. v. Johnson, 19 Cal.2d 162, 119 P.2d 945, decided by the Supreme Court of California is strongly relied upon by the defendant as supporting its position. The other case, Morrison-Knudsen Co., Inc., v. State Tax Commission, 242 Iowa 33, 44 N.W.2d 449, 451, 41 A.L.R.2d 523, is relied upon by the plaintiff with equal confidence as furnishing support for the correctness of the ruling of the trial court in rendering judgment in its favor.

Neither of the two cases cited is exactly in point on its facts with the one before us. Nevertheless, the facts of Morrison-Knudsen Co., Inc., v. State Tax Commission, supra, decided by the Supreme Court of Iowa, more nearly parallel the findings of the court in the instant case. For that reason, we deem it more persuasive in its reasoning than the earlier case by the

Supreme Court of California, Chicago Bridge & Iron Co. v. Johnson, supra.

In the former case it appeared from the stipulated facts that the plaintiff was a Delaware Corporation with its principal place of business in Boise, Idaho. It was engaged in large construction jobs for railroads throughout the United States. In carrying on its work the plaintiff purchased, transported from place to place and used in various states many pieces of construction equipment. Pursuant to this practice and about May, 1945, it began construction work in Iowa for the Rock Island Railroad Company which it completed later that year. It brought into Iowa 105 separate items of construction equipment which it removed from the state when it had finished the work.

Soon after the plaintiff began work on its Iowa contract, it was approached by a representative of the State Tax Commission who levied an assessment of the use tax against it, based on the original purchase price of the equipment brought into Iowa. The plaintiff denied liability for the tax and contended, if liable at all, the tax should be imposed on the basis of the value of the equipment when brought into Iowa rather than its original purchase price. It paid the tax assessed in the sum of $5,121.86 on the original cost of the construction equipment and later sued for a refund of such amount.

The language of the Iowa act imposing the tax is substantially the same as that of our own statute. The trial court, having held the plaintiff liable for the tax, denied the claim for refund and the matter was brought before the Supreme Court of that state. In a very well reasoned opinion the Supreme Court reversed the trial court and ordered a refund of the money paid. The case is so similar to the one before us that we quote at some length from the opinion. Among other things the court said:

"* * * The equipment was purchased at numerous times during the eight years before brought into Iowa for use here commencing in May, 1945. It was bought mostly in states remote from Iowa and used in various remote states long before its use here. Nineteen items were purchased in California. Most of them were first used there. Much of the equipment was bought in Washington, Oregon, Idaho (where plaintiff has its principal place of business), Utah, New York (13 items), and North Carolina.

\*   \*   \*   \*   \*   \*

"Whether property is purchased for use here should be determinable at or near the time of its purchase. It should not be necessary to delay determination of that question eight years until the property is first used here. Not until such use in Iowa could

any claim possibly be made a use tax was owing. To repeat, the only basis for such claim is the fact of use in Iowa.

\*   \*   \*   \*   \*   \*

"Our decisions have been careful to point out that the use-tax law is supplementary to the sales-tax law and protects Iowa dealers who must collect and pay a sales-tax by placing them on a tax equality with competing out-of-state vendors whose sales are not subject to the sales tax. Also that the principal purpose of the use-tax law was to remedy the evil of out-of-state buying to escape the sales tax.

\*   \*   \*   \*   \*   \*

"Defendant attempts to justify the trial court's holding on the theory the equipment was purchased for use wherever plaintiff's business required it. The argument is unsound and involves an unwarranted extension of section 423.2 [I.C.A.] which requires purchase for use in this state. Under defendant's reasoning a resident of another state which has no sales tax would be subject to the Iowa use tax if he moved here for a few months and brought with him his 8-year-old automobile or household furniture on the theory it was necessarily purchased for use wherever he might live. And such tax would equal two per cent of the original purchase price even if the property were worth only a small fraction thereof when brought to Iowa.

If the legislature intends to impose a use tax under such circumstances it is not too much to require it to do so in terms more clear and unmistakable than the present section 423.2."

The obvious distinction between the Iowa case from which we have just quoted and the earlier case in the Supreme Court of California lies in the reasoning of the court as respects a portion of the materials and equipment involved. They fell into two different classifications. A larger portion of the materials upon which the use tax was sought to be imposed "were purchased by plaintiff to fabricate tanks *specifically* to fulfill contracts or orders for tanks in California". (Emphasis ours.) [19 Cal. 2d 162, 119 P.2d 948.] As the California Supreme Court properly held, with which holding we quite agree, such materials "were purchased for use, storage or other consumption in" California.

Another portion of the materials the sales price of which was made the measure of the use tax imposed were materials purchased by plaintiff and retained as stock in its plants outside the state to be used in the construction of tanks as and wherever its business might require. The court held these materials, likewise, were to be taken into account, seemingly in disregard of whether purchased for use or other consumption in that state, and notwithstanding their prior use in some other state, if actually brought into California and stored or used.

It was with this portion of the California decision that the Iowa Supreme Court in Morrison-Knudsen Co., Inc., v. State Tax Commission, supra, disagreed. It is with this portion of the California decision that we likewise disagree. The Iowa court holds the mere fact that property is used in another state prior to being brought into Iowa will not defeat the tax if actually purchased for use in Iowa and whether so purchased is a matter for determination "at or near the time of its purchase."

We quite agree with the Iowa court that in making the "sale price" the measure for determining the amount of the tax the legislature gave unmistakable proof of an intention contrary to the construction given the act by the California Supreme Court as to the materials falling in the second category mentioned. The sale price, naturally, is fixed as of or near the time of its purchase and, notwithstanding the practice shown in the record before us of assessing the tax at 2% of the "book value" of the property at the time of laying the tax, the Bureau of Revenue merely emphasizes and endeavors to alleviate the injustice of the construction for which it contends.

It appears from the record before us that for more than a decade after the enactment of the statute authorizing imposition of the use tax the Bureau of Revenue made no effort to collect same from the plaintiff, or other concerns in its category. Indeed, under an opinion of the then Attorney General, the Honorable C. C. McCulloh, in December, 1953, directed to E. S. Walker as Commissioner of Public Lands, it was given as the opinion of that office that the administrative policy of the Bureau of Revenue with reference to collection of the tax in prior years would prove a serious handicap to the defendant Bureau in any effort to collect same by reason of the doctrine of administrative interpretation. Cases such as Temple Lodge No. 6, A. F. & A. M. v. Tierney, 37 N.M. 178, 20 P.2d 280; Nye v. Board of Commissioners of Eddy County, 36 N.M. 169, 9 P.2d 1023, and Dillard v. New Mexico State Tax Commission, 53 N.M. 12, 201 P.2d 345, lend strong support to plaintiff's reliance on administrative interpretation against the claim of liability to the tax under the facts here shown. The strongest support for the decision of the trial court, however, arises from a proper construction of the language of the Act itself.

An annotation on the subject "Use tax on property purchased by nonresident in another state" follows the A.L.R. report of Morrison-Knudsen Co., Inc., v. State Tax Commission, 242 Iowa 33, 44 N.W.2d 449, 41 A.L.R.2d 523, with annotation beginning at page 535. There is also a general annotation of the subject, "Constitutionality, construction, and application of general use tax or other compensating tax designed to complement state sales tax" to be found at

129 A.L.R. 222, with supplemental annotation in 153 A.L.R. 609. And for a very illuminating discussion of the nature, purpose, and object of use taxes, see In re Los Angeles Lumber Products Co., Ltd., D.C., 45. F.Supp. 77.

It is our considered judgment that the plaintiff is entitled to the refund awarded it by the judgment reviewed. It follows that the judgment of the trial court should be affirmed.

It is so ordered.

LUJAN, McGHEE and KIKER, JJ., concur.

COMPTON, Chief Justice (dissenting).

Appellee is a Delaware Corporation, with its principal office in Fort Worth, Texas, and is authorized to transact business in New Mexico, Texas, Louisiana, North Dakota, South Dakota, Wyoming, Montana, Utah and Colorado.

Appellee's intention to use the drilling rigs when purchased in any state where the demands of its business might require, including New Mexico, fixes the taxable event as provided by § 72–17–3, 1953 Comp. Appellee has an extensive covering of New Mexico oil fields, particularly Eastern New Mexico. The facts here are so unlike the Iowa case relied on by the majority, where the drilling rigs were first used in states remote from Iowa, as to destroy the force of that case as authority for the conclusion announced.

The majority permits the bringing into the State rigs of the value of $236,000, purchased elsewhere and to be used in drilling oil and gas wells in New Mexico tax free. This discriminates against purchases made within New Mexico. The mere fact that the rigs may have been used in another state first is unimportant, and the judgment should be reversed. The majority having concluded otherwise, I dissent.