494 P.2d 167

The BENEVOLENT AND PROTECTIVE
ORDER OF ELKS, LODGE NO.
461, Protestant-Appellant,

v.

NEW MEXICO PROPERTY APPRAISAL
DEPARTMENT, Respondent-Appellee.

No. 590.

Court of Appeals of New Mexico.

July 30, 1971.

Certiorari Granted Sept. 20, 1971.

Donald B. Moses, James F. Beckley, Nordhaus & Moses, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., Anne K. Bingaman, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

HENDLEY, Judge.

The Benevolent and Protective Order of Elks, Lodge No. 461, (Elks) filed a direct appeal, pursuant to § 72–25–19, N.M.S.A. 1953 (Int.Supp.1970), from an adverse ruling of the Property Tax Appeal Board (State) which relates to (1) the assessment of the Elks' property for 1969 as not being within the taxable exemption portion of Article VIII, Section 3 of the New Mexico Constitution, and (2) the State's decision being arbitrary and capricious in its refusal to accept the Elks' requested findings of fact.

We affirm.

CHARITABLE TAX EXEMPTION.

Article VIII, Section 3 of the New Mexico Constitution, as amended, exempts from taxation " * * * all property used for educational or charitable purposes * * *." It is the Elks' contention that if a proper construction of the specific grant of tax exemption contained in the foregoing section is made it " * * * will yield the conclusion that the exemption should be granted."

The Elks assert that in construing the charitable tax exemption we are controlled by the case of Temple Lodge No. 6, A.F. & A.M. v. Tierney, 37 N.M. 178, 20 P.2d 280 (1933) which was cited approvingly in the subsequent cases of Albuquerque Lodge, No. 461, B.P.O.E. v. Tierney, 39 N.M. 135, 42 P.2d 206 (1935) and Santa Fe Lodge No. 460, B.P.O.E. v. Employment Security Commission, 49 N.M. 149, 159 P.2d 312 (1945) wherein the New Mexico Supreme Court stated that the problem " * * * is to ascertain the reasonable and probable intent" of the constitutional exemption and that " * * * the canon of strict construction cannot afford a sure formula for the decision * * *."

The Elks assert that to ascertain the reasonable and probable intent of the charitable exemption three guide-lines should be followed: (1) Legislative history, (2) Uniformity of administration, and (3) Decisions of the Supreme Court of New Mexico.

1. *Legislative History.*

The Elks contend and we agree that the present constitutional provision is a significant departure from the original territorial provision exempting certain institutions from taxation. See *Temple Lodge.* As the Elks point out the territorial laws stated that the property of charitable institutions " * * * shall be devoted exclusively to the appropriate objects of such institutions." Such is not the language of the present provision.

2. *Uniformity of Administration of Taxation.*

It is the Elks' contention here that the property owned and used by Elks, which was first located at the corner of Fifth and Gold in Albuquerque and is presently located near the corner of University Blvd. and Indian School Road N.E. in Albuquerque, has never been subject to taxation and the one attempt at taxation, as shown by the *Temple Lodge* case in 1933, was not allowed and accordingly it has been an administrative practice for some 58 years for the State to grant the Elks an exemption from taxation. The Elks further cite the *Temple Lodge* and *Albuquerque Lodge* cases for proposition that "This early interpretation and uniform practice is highly persuasive, if not controlling."

Elks also cite Rowan Drilling Company v. Bureau of Revenue, 60 N.M. 123, 288 P.2d 671 (1955) and Rask v. Board of Bar Examiners, 75 N.M. 617, 409 P.2d 256 (1966) wherein the Supreme Court cited the *Temple Lodge* case with approval for the proposition that "This court recognizes, and so should the Board, that long administrative construction is highly persuasive and will not lightly be overturned. * * *"

We agree that a long administrative construction is highly persuasive authority, however, such a rule is predicated upon the premise that the factual issues are similar.

3. *New Mexico Supreme Court Decisions.*

It is the Elks' contention here that the *Temple Lodge* and *Albuquerque Lodge* cases are controlling because there is no material distinction in the facts and accordingly the exemption should be granted.

We disagree.

There are substantial material differences between those cases and the instant case. *Temple Lodge* and *Albuquerque Lodge* state that they lay down no general rule as to

fraternal orders. In *Temple Lodge,* particularly, was this language:

"We find no fault with the idea that the educational or charitable use must be both substantial and primary. \* \* \*"

This philosophy was also followed in *Albuquerque Lodge* wherein the Supreme Court stated:

"But here, as there, we confine our decision to the facts before us, not making it a precedent even for other cases involving properties of the B.P.O.E. except as the proven facts disclose a use similar to that here shown. It is the use of property, not the declared objects and purposes of its owner, which determines the right to exemption. \* \* \*"

This language was subsequently adopted and approved in the *Santa Fe Lodge* case and accordingly it behooves us to review the actual use of the property before we can determine the right to exemption.

We examine the use of the property. The Annual Report for the 1968–69 Fiscal Year and the 1969–70 Annual Report which is not significantly different, shows that the Elks Lodge has 4,512 members; that the total assets are $1,860,046.93; that there is indebtedness of $167,737.27; that the total net asset is $1,692,309.66; and that the sum of $25,100.88 was expended on charity.

The record shows that the facilities owned by Elks consists of 8.006 acres which are improved by a 44,000 square foot building together with two swimming pools and an athletic complex. The 44,000 foot complex contains a lodge room which will accommodate 300 people, several small meeting rooms, ladies lounge, billiard room, card room, a bar, a kitchen with a 1,200 evening meal capacity, dining room with a 400 person seating capacity, a ballroom with a capacity of 1,000 people and several smaller rooms.

The record further indicates that there is no regular schedule for charitable use of the facilities and that nowhere close to 50% of the man-hours available for use of the building would be for charitable purposes. The facilities are used, however, for a Christmas party for the cerebral palsy children, by Scout Troops for occasional meetings and other organizations are occasionally permitted to use the facilities including the swimming pools and athletic complex.

Additionally, the Elks point out that the Elks Clowns, the Little Wheels, the Elks Veteran Hospital Committee, the Deer-hide Collection Committee and Christmas Basket Committee spend untold thousands of hours in doing their charitable work. Although these hours of work are largely away from the Elks premises, it may be inferred from the record that the premises are the organizational center and base for these activities. However, the Appeal Board found that less than 5% of the members were engaged in intermittent charitable work. Substantial evidence supports this finding.

In reviewing the charitable contributions of the Elks Lodge which are derived directly from the membership, solicitations and net income, at best 8% of the total income is expended for charitable purposes or less than 2½% of the total net assets are paid out for charitable purposes. When cash paid out for charitable purposes is viewed as against gross income, the record supports the finding that: "The total charitable contribution of protestant, does not exceed 5% of the combined lodge and club gross income annually." As previously noted above, the facilities have a limited charitable-purpose use.

The reader is referred to the *Temple Lodge, Albuquerque Lodge,* and *Santa Fe Lodge* cases for the facts on which those decisions are based. In our opinion, the facts set forth above—the size and extent of the facilities involved, their actual use in charitable activities, the amount of charitable work done by the membership, the membership participation in the work done,

and the income spent on charitable activities—are distinguishable from *Temple Lodge, Albuquerque Lodge* and *Santa Fe Lodge* cases. Those decisions do not require a holding, as a matter of law, that protestant is entitled to a tax exemption in this case. The issue, then, is one of fact. The record in this case provides substantial support for the finding: "The primary use of the property is for the social and fraternal activities of the members and their families and guests of the members of the lodge." Since to be entitled to the exemption the use for charitable purposes must be "substantial and primary," *Temple Lodge,* see Albuquerque Lodge and Mountain View Homes, Inc. v. State Tax Commission, 77 N.M. 649, 427 P.2d 13 (1967), and the Appeal Board found to the contrary on substantial evidence, denial of the exemption is affirmed. Compare Indianapolis Elks Bldg. Corp. v. State Bd. of T. Com'rs, Ind.App., 251 N.E.2d 673 (1969); Brockton, etc. v. Assessors of Brockton, 321 Mass. 110, 72 N.E.2d 406 (1947).

## FINDINGS OF FACT.

Having determined that the use must be substantial and primary, and in view of the foregoing facts as established by the record, we conclude that the decision of the Property Tax Appeal Board is not, as the Elks contend, arbitrary or capricious. The record supports the conclusion of law of the Board that the property "* * * is not used for charitable purposes as contemplated by Article VIII, Section 3, of the Constitution of the State of New Mexico, and is therefore, subject to ad valorem taxation." A refusal to accept requested findings and conclusions is not erroneous when the evidence supports the Board's findings which in turn supports its conclusion of law. Le Doux v. Peters, 82 N.M. 661, 486 P.2d 70 (Ct.App.), decided May 21, 1971.

Affirmed.

It is so ordered.

WOOD, C. J., and SUTIN, J., concur.