500 P.2d 199

In the Matter of the Appeal of the UNITED VETERANS ORGANIZATION et al., Plaintiffs-Appellants,

v.

NEW MEXICO PROPERTY APPRAISAL DEPARTMENT, Defendant-Appellee.

No. 819.

Court of Appeals of New Mexico.

June 30, 1972.

David R. Gallagher, Gallagher & Ruud, Albuquerque, for plaintiffs-appellants.

David L. Norvell, Atty. Gen., Ronald Van Amberg, Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

HERNANDEZ, Judge.

Pursuant to § 72–25–19(A), N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, Supp.1971), the several veterans organizations appeal a ruling of the Property Tax Appeal Board which holds that appellants' property is not exempt from ad valorem taxation.

The appellants claim error on three points. They are:

"POINT I: Certain of the findings of fact of the Property Tax Appeals Board are not supported by substantial evidence.

"POINT II: Failure to adopt all of the appellants requested findings of fact and conclusions of law constituted an arbitrary and capricious act and should not be upheld.

"POINT III: The substantial and primary use of the properties of appellants are for charitable and educational purposes, and are therefore exempt under Article VIII, Section 3 of the Constitution of the State of New Mexico."

Article VIII, Section 3 of the New Mexico Constitution exempts " * * * property used for educational or charitable purposes * * *" from taxation.

Over the years, our courts have been called upon many times to decide cases involving this specific section and out of them have evolved two fundamental rules: (1) "the educational or charitable use [of the property] must be both substantial and primary" and (2) "[i]t is the use of property, not the declared objects and purposes of its owner, which determines the right to exemption." Benevolent and Protective Order of Elks, Lodge No. 461 v. New Mexico Property Appraisal Department, 83 N.M. 505, 494 P.2d 167 (Ct.App.1971), aff'd 83 N.M. 447, 493 P.2d 411 (1972).

The uses made by the appellants of their properties are very similar one to the other. Each has a building with a large meeting room, which is used once or twice a month for membership meetings. This same room is used once or twice a week for bingo games which are open to the public. The room is rented at times for private parties

and is also used by the members for dances and parties. The building has a bar where beer is sold for thirty cents and all other liquor at fifty cents a drink. The barroom has pinball machines and other amusement devices. Some have separate card and billiard rooms and all have offices, storage rooms, bathrooms and all but one have kitchens. Meals are sold for about $2.00 apiece. The building is also used by the womens' auxiliary and some of the organizations sponsor boy scout troops who hold their meetings there. One appellant has a drum and bugle corps and a junior drum and bugle corps which also meet in the building, and all have various committees who meet there. An annual Christmas party is held for needy children.

We must, in our examination of the record, look not only to the variety but also to the magnitude of the various uses. Helpful in this regard are some of the gross income figures of the respective appellants.

American Legion Post No. 13 for the fiscal year ending April 30, 1970: bar $51,417.50; bingo $42,208.35; meals $16,202.13; hall rentals $9,837.90.

American Legion Post No. 72 for the fiscal year ending April 30, 1970: bar $38,344.00; bingo $98,688.00; pinball machines, etc. $2,730.00; hall rentals $775.00; shows $3,482.00; games $282.00.

American Legion Post No. 49 for the year 1970: bar $48,000.00 to $60,000.00; bingo $40,536.41.

Disabled American Veterans, Chapter No. 3 for the fiscal year ending April 30, 1970: bar $43,096.04; bingo $203,870.07; pinball machines, etc. $2,950.41; hall rentals $2,881.50.

Veterans of Foreign Wars Post No. 401 for the year 1970: bar, bingo and meals $148,112.76.

Appellee, in its answer brief, argued as follows concerning the use made by appellants of their property, referring here specifically to American Legion Post No. 13:

"The Appeals Board found that approximately 4,554 man hours * * * during the yearly period were devoted to charitable or educational activities * * *. In just eight months, from May 1970 through December 1970 * * the members and their guests and families consumed $31,261.67 worth of alcoholic beverages. Projecting this figure to a full year's gross, the bar revnues would amount to $46,892.91 (in the fiscal year ending April 1970, the bar revenues were $51,417.10, * * *). If each drink were to average fifty cents, * * * and if each drink were to take fifteen minutes to consume, the total number of man hours spent in this form of recreation on the premises would be approximately 23,446. In addition $6,621.77 worth of dinners were sold during the eight month period, and projecting this figure out for a full year, $9,932.60 would be grossed by the restaurant activity. ($16,202.13 worth of dinners were sold during the fiscal year ending April 1970 * * *). If each meal were to average $4.00 per meal * * * and if each meal were to take one hour to consume, approximately 2,483 man hours would have been spent on the premises during the year consuming food. In addition, there were many hours spent at dances, many hours spent by employees providing all of these recreational services, and a considerable number of hours spent on the premises playing bingo. * * * Totalling up these figures, a tremendous number of hours were spent on the premises in pursuit of recreation, while the number of hours spent by the members in charitable or educational pursuits appear quite meager by comparison. * * *"

Counsel for appellants countered as follows:

"What the appellee apparently is endeavoring to use as a means to combat the argument and evidence disclosed in our Brief in Chief is to minimize a discussion of a rather fundamental consti-

tutional provision to a mathematical formula, largely of his own making, revolving about an audit approach of bingo and booze.

"Its figure of 50 cents per drink and $4.00 for a meal is not a 'reasonable' construction of the evidence to arrive at a 'reasonable' conclusion that 'a tremendous number of hours were spent on the premises in pursuit of recreation' and that the charitable or educational pursuits were 'meager.' * * *

" * * *

"For decision by this Court is whether the 'premises,' with reason, can be chopped off from the admitted educational and charitable activities of these organizations and rendered subject to the ad valorem real estate taxes. To determine this with reason requires more than mathematical computations.

" * * * If the spirit of charity and education can be promoted to the extent that this record reflects these veterans organizations have accomplished, then we suggest that their base, their real property, and operating headquarters, be not classified as 'recreational luxury.' True, the test is the *use* of the property, but what limit is to be given this 'use' if it can sprout so much activity, upon which the appellee does not even dare comment?"

The net earning figures of appellants, perhaps, speak more eloquently about the use of the properties than anything else. Remembering that beer sold for thirty cents, liquor for fifty cents and meals for two dollars, these figures graphically reveal that the earning of profits with which to carry on the various charitable and patriotic activities of appellants was not the principal reason for which the properties were being used. Those figures are as follows:

Veterans of Foreign Wars Post No. 401 total receipts for the year 1970, from all sources including dues, were $189,832.13, disbursements of $173,096.27, net profit $16,735.86;

Disabled American Veterans Chapter No. 3 total receipts for the period from May 1, 1970 through December 31, 1970, including dues, were $192,156.03, disbursements of $196,773.52, loss $4,617.49;

American Legion Post No. 13 receipts for the fiscal year May 1, 1969 through April 30, 1970, from bar, bingo, meals, hall rentals, concessions (pinball machines), soft drinks and interest $129,240.-25, disbursements of $122,881.53, net profit $6,358.72;

American Legion Post No. 72 total receipts for the fiscal year May 1, 1969 through April 30, 1970 from all sources, including dues, $160,776.00, expenditures of $152,744.00, net profit $8,032.00;

American Legion Post No. 49 the club manager testified that the net profit was "$7,000.00-and-some dollars." In light of the foregoing, we need not consider findings setting forth the percentage of cash and income expended for charitable or educational purposes. Compare the Court of Appeals decision in BPOE v. Property Appraisal Department, supra.

Appellants' first point of error is that the following findings of fact were not supported by substantial evidence:

"Finding No. 5: 'That primarily the properties involved in this protest consist of a club house and meeting place for the benefit of the membership of the respective protestants and not for the benefit of the general public.'

"Finding No. 6: 'That the activities of the membership of the respective protestants, relating to charitable and educational purposes are secondary to their primary purpose, for which their respective properties are used.'

"Finding No. 7: 'That the principal source of income from the protestants from the use of their respective properties is Bingo, bars, and bar services, and food and food services.'

"Finding No. 9: 'That the respective properties of the protestants or either of them are not being used substan-

**118**

tially and primarily for charitable and educational purposes.'

"Finding No. 10: 'That the general public is not benefited to an extent to justify its accommodation for the loss of revenue which would result from the exemption from ad valorem taxation of the properties of the respective protestants.' "

 It is fundamental that if there is substantial evidence in the record to support a finding we are bound thereby. In deciding whether a finding has substantial support, we must view the evidence in the most favorable light to support the finding and we will reverse only if convinced that the evidence thus viewed, together with all reasonable inferences to be drawn therefrom, cannot sustain the finding. Further, only favorable evidence and the inferences to be drawn therefrom, will be considered, and any evidence unfavorable to the findings will not be considered. Martinez v. Sears, Roebuck and Co., 81 N.M. 371, 467 P.2d 37 (Ct.App. 1970). These rules apply equally to the decisions of administrative boards and tribunals. Kaiser Steel Corp. v. Property Appraisal Department, 83 N.M. 251, 490 P.2d 968 (Ct.App.1971).

 Findings 5, 6, 7 and 10 are not essential to the determination of this matter and will not be considered. The making of unnecessary and superfluous findings of fact or the presence of error in findings of fact on immaterial, irrelevant, or purely collateral issues is harmless and non-reversible error if the judgment is otherwise sufficiently supported. Paulos v. Janetakos, 43 N.M. 327, 93 P.2d 989 (1939).

 In our opinion, finding of fact No. 9, that the respective properties of the protestants, or either of them, are not being used substantially and primarily for charitable and educational purposes, has substantial support in the record. The foregoing disposes of all the property involved in this appeal except a parcel owned by American Legion Post 49, which bears code number 1 021 056 241 497 10802 and is located at 11015–11017 Central Ave., East, Albuquerque, New Mexico. The evidence as to bingo and bar income, and disbursements, does not apply to this property. The only evidence as to the use of this property is: "We use it mostly for storage and Scout meetings and Ladies Auxiliary meetings." This sentence does not compel a holding, as a matter of law, that this property was substantially and primarily used for educational or charitable use. It was appellants' burden to establish its right to the exemption. Flaska v. State, 51 N.M. 13, 177 P.2d 174 (1946). On the evidence of this one sentence the Property Appeal Board could rightly consider that the burden had not been met and find the use of this item of property as not meeting the requirements for the exemption.

 As to Point II, all but five of appellants' requested findings of fact are either immaterial or irrelevant to the sole issue, or are evidentiary. No error was committed in refusing to adopt these findings of fact. Galvan v. Miller, 79 N.M. 540, 445 P.2d 961 (1968). The five findings of fact just referred to are Nos. 42, 59, 72, 83 and 99 and all are to the effect that the respective properties of appellants are used exclusively for the support of the educational and charitable activities of appellants.

 This statement is antithetical to the position set forth in appellee's finding No. 9, just discussed, and where determinative findings are supported by substantial evidence, refusal of requested findings of fact to the contrary is not error. Moore v. Bean, 82 N.M. 189, 477 P.2d 823 (1970).

Deciding as we do as to Point I, we, by that act, decide Point III adversely to appellants.

Affirmed.

It is so ordered.

WOOD, C. J., and SUTIN, J., concur.