690 P.2d 451

**DUKE CITY LUMBER COMPANY, Petitioner,**

v.

**NEW MEXICO ENVIRONMENTAL IMPROVEMENT BOARD and New Mexico Environmental Improvement Division, Respondents.**

Nos. 5954/6066.

Court of Appeals of New Mexico.

May 31, 1984.

Certiorari Quashed Oct. 25, 1984.

Modrall, Sperling, Roehl, Harris & Sisk, John R. Cooney, Larry P. Ausherman, Albuquerque, for petitioner.

Paul Bardacke, Atty. Gen., Herbert M. Silverberg, Asst. Atty. Gen., Santa Fe, for Board.

Bruce S. Garber, Weldon L. Merritt, Jane C. Cohen, Asst. Attys. Gen., Santa Fe, for Division.

**OPINION**

BIVINS, Judge.

Following review, the Supreme Court reversed this Court's opinion filed June 28, 1983, and remanded for further review.

Duke City Lumber Company applied to the New Mexico Improvement Board (Board) for a one year variance from Air Quality Control Regulation 402(A). Following review of the denial of the application, this Court in *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 95 N.M. 401, 622 P.2d 709 (Ct.App.1980), *cert. denied*, 95 N.M. 426, 622 P.2d 1046 (1981) (*Duke City I*), remanded "with instructions to the Board to conduct further proceedings to determine whether the wood smoke in the volume being emitted from appellant's wigwam burner is 'injurious to health or safety.'" *Id.* at 407, 622 P.2d 709. The Board held a second hearing and again denied the appli-

cation for a variance. Duke City appealed, and we affirmed the denial in *Duke City Lumber Co. v. New Mexico Environmental Improvement Division*, 101 N.M. 301, 681 P.2d 727 (1983) (*Duke City II*). The Supreme Court granted certiorari, and reversed and remanded to this Court with instructions to determine if the Board's decision is supported by substantial evidence in the *record as a whole. Duke City Lumber Co. v. New Mexico Environmental Improvement Board and New Mexico Environmental Improvement Division*, 101 N.M. 291, 681 P.2d 717 (1984) (*Duke City III*).

The Air Quality Control Act defines air pollution as "the emission ... into the atmosphere of one or more air contaminants in such quantities and duration as may with *reasonable probability* injure human health * * *." NMSA 1978, § 74-2-2(B) (Repl.Pamp.1983) (emphasis added). With this definition in mind and reviewing the record as a whole, we must determine whether substantial evidence exists to support a denial of the variance. In doing so, we must view the evidence in the light most favorable to the Board's decision. *Duke City III; New Mexico Human Services Department v. Garcia*, 94 N.M. 175, 608 P.2d 151 (1980).

As we discussed in *Duke City II* the evidence before the Board falls within three categories: 1) medical proof; 2) citizen testimony; and 3) violation of the National Ambient Air Quality Standards (NAAQS) for particulates.

In *Duke City II* we said that no medical testimony demonstrated any causal connection between the emissions from Duke City's wigwam burner and *actual* injury to health. We came to that conclusion because scientists had gathered little data for the purpose of analyzing health effects from wood smoke. Our review of the whole record convinces us that the medical proof before the Board neither proves nor disproves to a reasonable probability that the wood smoke from Duke City's wigwam burner in the volume being emitted was injurious to health or safety.

As to the citizen testimony, the Supreme Court made clear in *Duke City III* that under the "legal residuum rule" there must be "a residuum of competent evidence to support the findings of an administrative agency where a substantial right is at stake." *Id.* at 295, 681 P.2d 717. While the citizen testimony is supportive of the Board's action in denying a variance, there is some question as to whether it would be admissible in a jury trial since, inter alia, the citizens were not sworn and not cross examined. Thus, we must look to the final category of evidence to determine if the Board's ruling can be upheld.

Both sides appear to agree that the effect wood smoke may have on health depends upon the concentration of particulate matter in the smoke.

The NAAQS for particulates is:

75 micrograms per cubic meter—annual geometric mean.

260 micrograms per cubic meter—maximum 24-hour concentration not to be exceeded more than once per year.

40 C.F.R. § 50.6 (1982).

Based on its modeling study, Duke City's expert testified that it was unlikely that the maximum concentration of particulate in the vicinity of the burner would ever exceed the NAAQS. And after monitoring of the ambient air quality, this expert concluded that at no time did a sample show a concentration exceeding the 260 micrograms—24-hour concentration standard.

In contrast, the results of the New Mexico Environmental Improvement Division's (EID) air dispersion model demonstrated that particulate concentrations substantially in excess of the 260 micrograms per cubic meter for particulates can reasonably be expected to occur at Duke City's burner. The tabulation showed, for example, that on fourteen out of fifteen modeled days the concentrations exceeded the NAAQS. One twenty-four hour average particulate concentration measured 949 per cubic meter, and eight additional days fell in the 390–650 per cubic meter range. The results of the EID model were reviewed by an air

quality specialist who confirmed that the results unequivocally established violations of the NAAQS for particulates.

Based on claimed deficiencies in the EID modeling study, Duke City argues that the Board acted arbitrarily and capriciously in relying on that evidence. The deficiencies in the EID model, according to Duke City, include lack of verification in assumptions, failure to adjust for the burner's variable damper, use of inaccurate input data, and inaccuracies in the model itself. The record, however, does not support a finding that these deficiencies existed.

The Board and EID counter claiming that Duke City's air quality expert was not qualified, that his testimony was "riddled with uncertainties and inconsistencies", and that the results were unreliable. In fact, according to EID's expert, "The results are meaningless," because of Duke City's choice of models and the use of incorrect input. Another expert criticized Duke City's monitoring based on its use of a single local monitor as opposed to a strategically-located multiple monitor system which would be necessary to obtain a true and accurate reading of particulate concentrations.

As we pointed out in *Duke City II*, the function of a reviewing court is to determine whether a rational basis exists for the reliability of modeling studies. We said, "There must be rational connections between the factual inputs, the modeling assumptions, the modeling results and the conclusions drawn therefrom." We find that this test has been met, and the Board could rely on the EID modeling results in arriving at its decision.

As stated in *Ethyl Corp. v. Environmental Protection Agcy.*, 541 F.2d 1 (D.C. Cir.1976):

[A]fter our careful study of the record, we must take a step back from the agency decision. We must look at the decision not as the chemist, biologist or statistician that we are qualified neither by training nor experience to be, but as a reviewing court exercising our narrowly defined duty of holding agencies to certain minimal standards of rationality. "Although [our] inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." * * We must affirm unless the agency decision is arbitrary or capricious. (Citation and footnote omitted).

541 F.2d at 36–37.

We have reviewed the whole record and conclude that the Board's decision should be affirmed, if violation of the NAAQS for particulates constitutes a condition injurious to health or safety.

In *Duke City II* we raised, but did not answer, the question of whether violation of the NAAQS constitutes per se a condition injurious to health or safety. The Supreme Court did not in *Duke City III* make "a determination as to whether violation of that standard alone, or in conjunction with medical evidence * * * justifies denial of a variance." Because of the lack of definitive medical proof in this proceeding, the Board's denial of the variance must stand, if at all, on the basis of violation of the NAAQS.

We note at the outset that Duke City did not in either its petition for certiorari to the Supreme Court or its earlier appeal to this Court seek review of the NAAQS as an acceptable standard or as a standard the violation of which justified denial of the request for a variance. In fact, all of the parties to this appeal have relied on the NAAQS.

There is good reason for the parties to adopt the NAAQS for particulates as the primary criteria for either the grant or denial of Duke City's application for a variance. Congress has directed the Administrator of the Federal Environmental Protection Agency (EPA) to adopt national primary and secondary ambient air quality standards for each air pollutant. 42 U.S. § 7409. The standards prescribed "shall be ambient air quality standards the attainment and maintenance of which in the judgment of the Administrator, based on such criteria and allowing an adequate margin of safety, are requisite to protect the public

health." *Id.* All of the states have been required by Congress to meet and enforce these standards. *See generally* 42 U.S.C. § 7410.

As pointed out in *Lead Industries Ass'n v. EPA,* 647 F.2d 1130 (D.C.Cir.1980), "[T]he task of [identifying harmful effects] * * * is complicated by the absence of any clear thresholds above which there are adverse effects and below which there are none." *Id.* at 1152. Recognizing this difficulty, the Administrator has taken the position that Congress has directed him to err on the side of caution in adopting the standards. The D.C. Circuit in *Lead Industries* has described the situation as follows:

> First, Congress made it abundantly clear that considerations of economic or technological feasibility are to be subordinated to the goal of protecting the public health by prohibiting any consideration of such factors. Second, it specified that the air quality standards must also protect individuals who are particularly sensitive to the effects of pollution. Third, it required that the standards be set at a level at which there is "an absence of adverse effect" on these sensitive individuals. Finally, it specifically directed the Administrator to allow an adequate margin of safety in setting primary air quality standards in order to provide some protection against effects that research has not yet uncovered * * *.
>
> \* \* \* \* \* \*
>
> * * * [R]equiring EPA to wait until it can conclusively demonstrate that a particular effect is adverse to health before it acts is inconsistent with both the Act's precautionary and preventive orientation and the nature of the Administrator's statutory responsibilities.

*Id.* at 1153, 1155. For a history of the development of federal clean air legislation and the role of the states, see *Train v. Natural Resources Def. Council,* 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975).

Duke City argues that Congress, by allowing an adequate margin of safety, not only contemplated but countenanced occasional excursions beyond the limits of the NAAQS. We disagree. *Lead Industries* makes clear that the margin of safety protects "against effects which have not yet been uncovered by research and effects whose medical significance is a matter of disagreement." 647 F.2d at 1154 (footnote omitted). *See also Republic Steel Corp. v. Costle,* 621 F.2d 797 (6th Cir.1980).

Therefore, we hold that violation of the NAAQS for particulate matter, as established by substantial evidence in this case, not only justified but mandated denial of Duke City's application for a variance. In so holding we determine that violation of the NAAQS for particulates establishes per se injury to health.

We hold that the Board's denial of the variance was neither arbitrary and capricious, nor an abuse of discretion. Its action accords with the law, and the result finds support in substantial evidence. Our determination is based on review of the record as a whole.

While we affirm the denial of Duke City's variance, we observe that the judicial process has unavoidably afforded Duke City the very relief which the Board denied. This is unfortunate.

We affirm the Board's action in denying the variance. Appellate costs shall be borne by Duke City.

IT IS SO ORDERED.

HENDLEY and NEAL, JJ., concur.